UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAGENE C. MCGHEE,

      Plaintiff,

v.                  Case No. 23-cv-24-pp

IRIS N. TORRES, JULIE CAPRARO,
ANDREA POPP, LT. RANDY JOHNSON,
SGT. JOEL CAMPBELL, DENISE BONNETT,
DILIP TANNAN and D. PROEHL,

      Defendants.

---

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Lagene C. McGhee, who is incarcerated at Sandstone Federal Correction Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights when he was incarcerated at the Manitowoc County Jail, Dodge Correctional Institution and Oshkosh Correctional Institution. The plaintiff has paid the full filing fee. This decision screens his complaint, dkt. no. 1.

**I. Screening the Complaint**

  **A. <u>Federal Screening Standard</u>**

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

1

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has sued five defendants who work at the Manitowoc County Jail: Dr. Iris Torres, Nurse Julie Capraro, Nurse Andrea Popp, Lieutenant Randy Jackson and Sergeant Joel Campbell. Dkt. No. 1 at 1. He has sued one defendant—Nurse Practitioner Denise Bonnett—who works at Dodge Correctional Institution. Id. And he has sued two defendants who work at Oshkosh Correctional Institution, Dr. Dilip Tannan and Nurse D. Proehl. Id.

1.   *Manitowoc County Jail Allegations*

The plaintiff alleges that on May 30, 2021, while confined at the Manitowoc County Jail, he slipped and fell on a wet floor near the restroom area and injured himself. Id. at 3. He says the floor was wet because it had just been mopped and that Manitowoc County Jail administration "failed to ensure that maintenance/inmates (who mopped the floor) were provided with the proper caution signs or advised on how to properly place the signs on floors that have just been mopped." Id. According to the plaintiff, individuals incarcerated at the jail mop the floors at about the same time every day and jail staff knew of the wet floor safety hazard. Id. at 4.

The defendants allegedly failed to provide the plaintiff with adequate medical treatment for his injuries from the fall, which consisted of a compressed fracture to his lower back and pelvis area as well as the exacerbation of a pre-existing knee injury. Id. at 5, 10. After the plaintiff fell, he

3

instructed other incarcerated individuals in the area to get help and one of them waited with him until jail staff arrived. Id. at 10. The plaintiff alleges that when staff arrived at the scene, Nurse Popp instructed other jail staff to help the plaintiff into a wheelchair and they escorted him to an observation cell. Id. The plaintiff says that for his initial treatment, he was prescribed "2/500 mg. of Tylenol to be taken twice a day" and an ice pack for his back. Id.

The plaintiff alleges that the day after the fall, he experienced excruciating pain and asked another incarcerated individual to alert staff. Id. Staff allegedly noted the incident but did nothing to ease or treat his pain. Id. The plaintiff says that later, Nurse Julie Capraro saw him and took his vitals, during which time he advised her of his pain and asked for help. Id. Nurse Julie allegedly examined the plaintiff's back and said she saw swelling and bruising but she did nothing to ease or treat his pain. Id. at 11.

The next day (June 1, 2021), Nurse Julie allegedly saw the plaintiff again and he told her he was in pain. Id. The plaintiff says that other than the medication he had already been prescribed, Nurse Julie didn't do anything to treat his pain and he continued to suffer. Id.

In the early morning hours of June 2, 2021, jail staff allegedly saw the plaintiff struggling to get out of his bunk. Id. The plaintiff says that an officer noted the plaintiff was in so much pain that he barely made it out of bed and to the table for breakfast. Id. According to the plaintiff, staff observed that he was in so much pain that he gave his tray away, but they did not treat him. Id.

Later that same day, Dr. Torres allegedly examined the plaintiff. Id. The plaintiff says he told Dr. Torres that he had difficulty getting out of bed, standing and walking because he was in so much pain. Id. After the examination, Dr. Torres allegedly concluded that the plaintiff would get X-rays of his "lower spine AP, and Lot and Pelvis 1-2 views." Id. The plaintiff says he requested an MRI, but Dr. Torres decided that was not necessary. Id.

Also on that same day, the plaintiff saw a nurse practitioner (not a defendant) due to his complaints of lower back pain and pelvic pain. Id. The nurse practitioner allegedly assessed that the plaintiff was suffering lower back pain and pelvic pain and documented his pain level, but she did not treat his condition. Id. at 11-12. The plaintiff alleges,

> Sadly, from the day of his injury to the day he was transferred to the Wisconsin Prison System the plaintiff suffered from needless pain in his knee, back, and pelvic area. There were multiple times when MCJ staff and HSU staff had the opportunity to treat and help ease the plaintiff's pain, yet they disregarded his condition and allowed him to suffer. This even after the plaintiff submitted several complaints to the MCJ staff and HSU staff complaining of the extreme pain he was experiencing and after MCJ staff and HSU staff witnessed the plaintiff experiencing and struggling with his pain.

Id. at 12.

### 2. *Dodge Correctional Institution Allegations*

On June 10, 2021, the plaintiff transferred from the jail to Dodge Correctional Institution. Id. at 13. He alleges that when he arrived at Dodge, Health Services Unit ("HSU") staff conducted a screening and assessment and noted that he presented with lower back pain. Id. The plaintiff submitted a health service request complaining about lower back pain. Id. Six days later, he

5

allegedly submitted another health service request advising that he had excruciating pain in his back and pelvic area. Id. The plaintiff says that two days later, Nurse Angela Rowin-Fox (not a defendant) saw him and prescribed him muscle rub and an extra blanket. Id. He states that this treatment did not work and that on June 22, he submitted another health service request alerting staff that he was in a lot of pain. Id.

The plaintiff alleges that on June 25, 2021, he saw Nurse Practitioner Denise Bonnett who documented his need for treatment as "high" and said that he should be seen soon due to "left sided back pain after slipped on the concrete at the jail [sic]." Id. Bonnett allegedly noted that the plaintiff should be evaluated and treated at Dodge and she advised two physical therapists about the plaintiff's injury, which resulted in the plaintiff receiving an x-ray on June 28. Id. The plaintiff says that the technician who reviewed the x-rays concluded that he had degenerative joint disease in his knee. Id. On July 4, he allegedly submitted a health service request complaining of back and left knee pain, and that the medication he was taking was not working. Id. The plaintiff states that three days later, a physical therapist evaluated him and Bonnett subsequently concluded that he would benefit from "PT as well as a CT/MRI imaging of his lower back." Id. at 14.

On July 19, 2021, the plaintiff allegedly submitted a health service request complaining of pain in his knee, back and pelvic area. Id. In response, HSU staff advised the plaintiff that he was scheduled to see an orthopedist on August 8, but he transferred to Oshkosh before that appointment. Id.

### 3. *Oshkosh Correctional Institution Allegations*

The plaintiff alleges that at Oshkosh, he was placed in the care of Dr. Tannan who saw him for his left knee and lower back pain on August 25, 2021. Id. Dr. Tannan allegedly observed tenderness, prescribed him naproxen and ordered x-rays of the plaintiff pelvis and spine. Id.

On August 30, Dr. Santiago Jiminez (a physical therapist who is not a defendant) allegedly examined the plaintiff and concluded that he had a compressed fracture and diffused degenerative changes, and that an MRI should be considered for his lower back and pelvic area. Id. On that same date, Dr. Nicolaus Kuehn (not a defendant) allegedly reviewed the plaintiff's "pelvis 1 or 2 views" and concluded that he should undergo a CT scan if his symptoms had not resolved within one week. Id. The plaintiff alleges that both reports were submitted to Dr. Tannan, but he did not change the plaintiff's medication, so the plaintiff continued to suffer from his pain. Id.

The plaintiff alleges that on September 29, 2021, a physical therapist named Nathan Pascke (not a defendant) saw the plaintiff, noted his symptoms including his pain level of 7 and that the plaintiff said he was in "extreme pain," recommended "Home Exercises" but did nothing else to treat or ease the plaintiff's pain. Id. at 14-15. On October 6, the plaintiff allegedly was discharged from physical therapy and the therapist referred him back to the provider to discuss options because conservative physical therapy had not shown improvement in back pain. Id. at 15. This physical therapy report was

7

submitted to Dr. Tannan, but he didn't see the plaintiff until almost four months later. Id.

On February 4, 2022, Dr. Tannan allegedly saw the plaintiff for a follow-up on his back and left knee pain. Id. The plaintiff states that during the appointment, Dr. Tannan told him that the orthopedist evaluated his knee, his MRI showed he had degenerative changes and that, due to the delay in receiving treatment, the orthopedist advised that an arthroscopy would not benefit the plaintiff's degenerative arthritis pain. Id. This was the last appointment the plaintiff had with Dr. Tannan, who allegedly transferred to another job. Id.

The plaintiff alleges that on February 22, 2022, he filed a grievance complaining that he was not receiving proper treatment for his pain. Id. He states that he has been transferred to the care of Dr. Nelson (not a defendant), whose primary diagnosis was that the plaintiff has "Advanced Degenerative Arthritis, torn meniscus, loose bodies in the posterior aspect" and "Advanced osteoarthritis of the left knee that has failed conservative treatment." Id. Dr. Nelson allegedly recommended left total knee replacement. Id. According to the plaintiff, Dr. Nelson's findings demonstrate that the treatment the plaintiff was receiving was ineffective. Id.

For relief, the plaintiff seeks compensatory and punitive damages, as well as proper treatment for his medical condition. Id. at 19.

8

C. Analysis

1. *Manitowoc County Jail*

The plaintiff does not state whether he was a pretrial detainee or a convicted prisoner while confined at the jail. The Eighth Amendment deliberate indifference standard articulated in Farmer v. Brennan, 511 U.S. 825, 834 (1994) applies if the plaintiff was incarcerated under a judgment after having been convicted. Estelle v. Gamble, 429 U.S. 97 (1976). The Fourteenth Amendment objective unreasonableness standard articulated in Miranda v. Cty. of Lake, 900 F.3d 335 (7th Cir. 2018) governs the plaintiff's claims if he was a pretrial detainee. State of Wisconsin and Wisconsin Department of Corrections online court records show that the events described in the complaint occurred after the plaintiff's probation was revoked in State of Wisconsin v. Lagene C. McGhee, Manitowoc County Case Number 2015CF148. See wcca.wicourts.gov; doc.wi.gov. Because the plaintiff had been convicted when he was confined at the jail, the court will apply the Eighth Amendment deliberate indifference standard applicable to convicted individuals.

To establish a constitutional violation with respect to prison living conditions, an incarcerated individual must be able to demonstrate both: (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities" (the claim's objective prong) and (2) the defendant acted with deliberate indifference with respect to the conditions (the claim's subjective prong). Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (quoting Farmer v. Brennan, 511 U.S. 832, 834 (1994)). Regarding his fall on

9

the wet floor, the plaintiff alleges that the floor outside the restroom was slippery because it had just been mopped and jail staff failed to use caution signs to alert about the wet floor. These allegations do not give rise to a constitutional violation because without more, slippery surfaces in prisons generally are not considered unconstitutionally hazardous. See Pyles v. Fahim, 771 F.3d 403, 410-11 (7th Cir. 2014). For example, even when an incarcerated individual plausibly alleged the warden "consciously ignored a safety hazard" of wet and slippery stairs after being told directly about it, the Seventh Circuit found that the hazard was not "sufficiently serious" to invoke the Constitution. Id. at 410. "Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." Id. at 410, 410 n.25 (collecting cases). Cf. Anderson v. Morrison, 835 F.3d 681, 683 (7th Cir. 2016) (incarcerated person stated Eighth Amendment claim when guards allegedly refused to help him descend slippery stairs obstructed with garbage while cuffed). The plaintiff has not stated a claim under §1983 based on his allegations that he slipped and fell on the wet floor.

The plaintiff also alleges that he received inadequate medical care for the injuries he suffered from the fall and that the defendants did not adequately treat his pain. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S.

10

97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to his health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

Regarding Nurse Popp, the plaintiff alleges only that she tended to him after the fall, directing that he be assisted to a wheelchair and taken to observation. The plaintiff does not allege that Nurse Popp's actions in response to his fall were inadequate or that she knew he needed more care. He has not stated a claim against Popp and the court will dismiss Popp as a defendant.

The plaintiff's allegations that Nurse Capraro and Dr. Torres failed to treat his complaints of pain, which resulted in ongoing and extreme pain, state a claim under the Eighth Amendment. See Pyles, 771 F.3d at 411. The plaintiff may proceed against Capraro and Torres based on these allegations.

The complaint makes no allegations against Lt. Johnson and Sgt. Campbell. The court will dismiss them as defendants.

### 2. *Dodge Correctional Institution*

The plaintiff's allegations against Nurse Practitioner Bonnett are the opposite of deliberate indifference. He alleges that after he transferred to Dodge, Bonnett documented his treatment need as "high," noted that he should be seen and treated for his injuries at Dodge, advised two physical therapists of the plaintiff's injuries and subsequently concluded that the plaintiff would benefit from physical therapy and a CT/MRI. While the plaintiff transferred to Oshkosh before his scheduled orthopedist appointment, he has not alleged that Bonnett had any involvement in the transfer. The plaintiff has not alleged that Bonnett disregarded a substantial risk to his health. He has not stated a deliberate indifference claim against Bonnett and the court will dismiss her.

### 3. *Oshkosh Correctional Institution*

The plaintiff alleges that Dr. Tannan treated his injury by prescribing medication, ordering x-rays and referring him to physical therapists. The plaintiff also alleges that Tannan reviewed the results of an MRI and the recommendation of an orthopedist with the plaintiff. These allegations weigh in favor concluding that the plaintiff does not state a deliberate indifference claim against Tannan. On the other hand, the plaintiff alleges that, after physical therapists concluded that conservative physical therapy showed no improvement in the plaintiff's back pain, Tannan allegedly did not see the plaintiff for a follow-up appointment for almost four months during which time the plaintiff experienced continued pain. The plaintiff may proceed on an

Eighth Amendment deliberate indifference claim based on the alleged almost four-month delay in seeing the plaintiff after the physical therapist referred the plaintiff back to Tannan because the conservative treatment was not effective.

The complaint makes no allegations against Nurse D. Proehl. The court will dismiss her as a defendant.

### III. Conclusion

The court **DISMISSES** defendants Andrea Popp, Randy Johnson, Joel Campbell, Denise Bonnett and D. Proehl

#### A. Service on State Defendant

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Dr. Dilip Tannan; the court **ORDERS** defendant Tannan to file a responsive pleading to the complaint within sixty days.

#### B. Service on Manitowoc County Defendants

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Dr. Iris N. Torres and Julie Capraro under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R.

13

§§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Torres and Capraro to file a responsive pleading to the complaint.

C. <u>Discovery and Service of Case Filings</u>

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 11th day of July, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**