UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAGENE MCGHEE,

        Plaintiff,        Case No. 23-CV-24

v.

DILIP TANNAN,
JULIE CAPRARO, and
IRIS TORRES,

        Defendants.

**JULIE CAPRARO'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Julie Capraro, through her attorneys, MUNICIPAL LAW & LITIGATION GROUP, S.C., respectfully submits the following Brief in Support of her Motion for Summary Judgment for Failure to Exhaust Administrative Remedies.

**RELEVANT ALLEGATIONS AND FACTS**

**A.    Allegations and Claim Against Nurse Capraro.**

Plaintiff alleges he sustained injuries from a slip and fall that occurred while he was incarcerated at the Manitowoc County Jail (hereinafter, "the jail") on May 30, 2021. (Dkt. 5, p. 3.) With respect to Nurse Julie Capraro, Plaintiff alleges the following:

> The plaintiff alleges that the day after the fall, he experienced excruciating pain and asked another incarcerated individual to alert staff. *Id.* Staff allegedly noted the incident but did nothing to ease or treat his pain. *Id.* <u>The plaintiff says that later, Nurse Julie Capraro saw him and took his vitals, during which time he advised her of his pain and asked for help. *Id.* Nurse Julie allegedly examined the plaintiff's back and said she saw swelling and bruising but she did nothing to ease or treat his pain</u>. *Id.*

1

(Id., p. 4.) Plaintiff claims he was ultimately diagnosed with "Advanced Degenerative Arthritis, torn meniscus, loose bodies in the posterior aspect" and "Advanced osteoarthritis of the left knee that has failed conservative treatment…. According to the plaintiff, [such] findings demonstrate that the treatment the plaintiff was receiving was ineffective." (Id., p. 8.)

The Court allowed Plaintiff to proceed on an Eighth Amendment claim against Nurse Capraro based on allegations that Nurse Capraro provided no medical care when she saw Plaintiff (on May 31, 2021) even though she observed swelling and bruising, and even though Plaintiff complained about pain and asked for help. (Id., pp. 3, 11.)

**B.     The Jail's Grievance Process.**

The jail had a grievance policy and process in place during the events at issue that was "outlined in the inmate handbook and [was] posted in the cell blocks. Inmates [could also] get additional information or clarification about the grievance process by submitting a request slip to a corrections officer." (LaCrosse Aff., Ex. 1, Grievance Policy 108.17); (LaCrosse Aff., Ex. 2, Inmate Handbook, p. 5) ("If you need assistance in understanding the grievance process or completing a grievance form, you should request the assistance from a correctional staff member.").

An inmate was first required to attempt to resolve the issue informally by doing the following:

> Before you can file a formal grievance, you must attempt to resolve the issue by communicating with an officer through a request slip, or in person. Prior to filing a grievance about a medical issue, Health Services Unit (HSU) will need to be informed. If the issue is not resolved informally, you may then file a formal grievance.

(LaCrosse Aff., Ex. 2, Inmate Handbook, p. 5.)

If the issue was not resolved informally, the inmate was then required to submit a formal grievance as follows:

> To file a formal grievance, you will submit a request slip explaining the issue and request a grievance form. The officer receiving the request slip will give you a grievance form (and envelope if requested). Form must be complete & legible.
> A grievance must comply with the following rules to be accepted:
>
> 1) An inmate may submit a request slip asking for a grievance form if, within 7 calendar days of the date the complaint was submitted, the complaint has not been resolved to your satisfaction or you have not received a written response from the officer or supervisor involved. You will have 2 days to complete the grievance form once you receive it. Unless you show good cause for the delay, time limits will apply….
>
> 6) A grievance will be investigated and a decision issued within 7 calendar days from the date the grievance is accepted, unless denied. If you do not receive a decision within 7 calendar days, the grievance may be deemed denied at the end of the 7th calendar day, unless jail personnel inform you that it is being investigated and more time will be needed to complete the response….

(LaCrosse Aff., Ex. 2, Inmate Handbook, p. 6.)

Finally, if the grievance was denied, the inmate could then appeal the decision by doing the following:

> 7) If the grievance is denied, you may file an appeal with the jail administrator within 7 calendar days of the grievance denial. You have 2 days after receiving an appeal form to complete it. File an appeal on a new grievance form with the "Appeal" box checked.
>
> 8) An appeal will be reviewed and a decision issued within 7 business days from the date the appeal is received, unless denied. If you do not receive a decision within 7 business days, the appeal will be deemed denied at the end of the 7th business day, unless otherwise noted in #6 above.

(LaCrosse Aff., Ex. 2, Inmate Handbook, p. 6.)

### C. Plaintiff's May 31, 2021 Grievance.

On May 31, 2021, Plaintiff submitted a grievance that indicated the following:

On the date of 5/30/2021, I … slipped [and] fell on unit. I was taken to receiving cell. The 1st shift nurse informed me … that she was adding more meds for me to

take 2 times a day.  When 2nd shift c/o brought meds on the night of 5/30/2021 she only [gave] me half of what I was suppose to get.  I stated to c/o that I was suppose to get more & asked him to check.  He stated "no this is all you get."  On 5/31/2021 between 5:00 AM & 9:00 AM I asked to see a nurse & for the rest of my meds & was denied until after 9:00 AM on 5/31/2021.  I told nurse I was in a lot of pain & that I have not been getting all of my meds.  1 of 2 things happened.  The nurse forgot to right it down that she upped my meds or the c/os … never check[ed].

[D]on't know, but I was in a lot of pain for a long time and no c/o checked from 8:00 pm 5/30/21 to 8:00 pm 5/31/21 and I asked them all every time they came to my door.  And somebody is negligent.  I have not been seen by dr. or had xrays or MRI.

(LaCrosse Aff., Ex. 3, McGhee 5/31/21 Grievance.)

On June 3, 2021, Plaintiff was provided with a response indicating his grievance was "denied."  (Id.)  On June 10, 2021, Plaintiff was transferred from the jail to Dodge Correctional Institution.  (Dkt. 5, p. 5.)

On July 8, 2021, Plaintiff sent the Manitowoc County Jail Administrator a document appealing the denial of his May 31, 2021 grievance.  (LaCrosse Aff., Ex. 4, McGhee 7/8/2021 Appeal.)  That document indicates the following:

I am appealing denied Grievance I filed on 05/31/2021, which caused deliberate indifferent by Manitowoc County Jail staff nurses and correctional officers, see copy of my grievance filed on 05/31/2021.  I received denied responses from Lr. Johnson with no reason why my grievance was denied.  But it is clear that Manitowoc County Jail staff nurses and c/o's neglect of my injury caused me to be in a lot [of] pain for a long time.  Also requesting names of nurses and correctional officers involved.

(Id.)

The Manitowoc County Jail Administrator did not receive the foregoing document until August 25, 2021 because Plaintiff mailed the document to the wrong address.  (LaCrosse Aff., 8.)  On August 30, 2021, the Jail Administrator sent Plaintiff a letter in response to the foregoing document which indicated "I do not know what the basis to your appeal is or what resolution you are asking for," and that explained the following:

> Medical was called and involved with your incident upon learning of the fall. You were moved to 1st floor for medical observation the day of and placed on a medical observation log. You were already on meloxicam for your preexisting medical issues & pain. The jail Dr was informed of the situation. Further pain medication and ice were ordered by the Dr. X-rays were ordered and taken. You were seen by the jail RNs daily during this time as you can see in the medical records. You were physically seen by Dr. Torres on 6.2.21. All medical bills were paid by the jail.

(LaCrosse Aff., Ex. 5, 8/30/21 Response to Appeal.)

## ARGUMENT

**I. PLAINTIFF FAILED TO EXHAUST ALL AVAILABLE ADMINISTRATIVE REMEDIES.**

42 U.S.C. § 1997e(a), commonly known as the Prison Litigation Reform Act (PLRA), indicates that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail or prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA requires inmates to exhaust all available administrative remedies before they can proceed with filing a federal lawsuit. *Santiago v. Ware*, 205 Wis. 2d 295 (Ct. App. 1996); *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532 (7th Cir. 1999).

The exhaustion requirement provides officials with an opportunity to address inmate claim before litigation becomes necessary and "seeks to reduce the quantity and improve the quality of prisoner suits." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The United States Supreme Court has referred to the exhaustion requirement as the PLRA's "centerpiece" and has reiterated that exhaustion is mandatory and "not left to the discretion of the district court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "[A] court may not excuse a failure to exhaust, even to take such circumstances into account. No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and

courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, this Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Ross v. Blake*, 136 S.Ct. 1850, 1855-57 (2016).

The PLRA requires inmates to exhaust all remedies available at the jail prior to filing a federal lawsuit. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints in the place, and at the time, the prison's administrative rules require."). This includes filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing any available appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), in the place, and at the time, the jail's administrative rules require, *Pozo*, 286 F.3d at 1025. Exhaustion is required "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Courts have dismissed claims on exhaustion ground when the inmate submitted an initial grievance but then failed to appeal the grievance decision, or when he submitted an untimely appeal. *See Crouch v. Brown*, 27 F.4th 1315, 1322 (7th Cir. 2022) (plaintiff failed to exhaust all available administrative remedies because "[t]here is no evidence that Crouch appealed a ROCH through the available administrative process"); *Taylor v. Van Lanen*, 2011 WL 4344233, ¶2, (E.D. Wis. 2011) ("Plaintiff did not appeal. By failing to appeal, Plaintiff failed to use 'such administrative remedies as are available.'"); *Monroe v. Koren*, 2021 WL 6197838, *6 (E.D. Wis. 2021) ("Even if [the grievance] is interpreted as having raised the issue of the defendants' treatment decisions, the plaintiff did not exhaust because he did not complete the appeal process.").

The Eighth Amendment claim alleged against Nurse Capraro should be dismissed on exhaustion grounds because the grievance Plaintiff submitted on May 31, 2021 did not provide jail administrators with notice of the alleged "nature of the wrong." In this lawsuit, Plaintiff alleges that Nurse Capraro violated his constitutional rights when she saw him on May 31, 2021 because "he advised her of his pain and asked for help," she "saw swelling and bruising," and she "did nothing to ease or treat him pain." However, the grievance Plaintiff submitted on May 31, 2021 only indicates the following: "I told nurse I was in a lot of pain & that I have not been getting all of my meds. 1 of 2 things happened. The nurse forgot to right it down that she upped my meds or the c/os … never check[ed]." Notably, the grievance does not indicate that Nurse Capraro provided Plaintiff with no medical care, that she did nothing to ease Plaintiff's pain, or that there were shortcomings regarding the medical care she provided. The grievance instead indicates that Nurse Capraro *was providing Plaintiff with the appropriate medical care – i.e., "she upped my meds"* – but that she may have forgotten to write the new medication order down.

The grievance did not place jail officials on notice that Nurse Capraro was refusing to provide Plaintiff with medical care, or that there were shortcomings regarding the medical care Nurse Capraro was providing. Notably, if jail officials had notice of the same, they could have required Nurse Capraro to provide Plaintiff with medical care, to provide him with additional medical care, and/or to provide him with alternative medical care at that. Such measures could have prevented, or mitigate, the harm Plaintiff alleges he sustained as a result of the same, i.e., "Advanced Degenerative Arthritis, torn meniscus, loose bodies in the posterior aspect" and "Advanced osteoarthritis of the left knee that has failed conservative treatment." *See Dye v. Bartow*, 2007 WL 3306771, at *5 (E.D. Wis. 2007), aff'd, 282 F. App'x 434 (7th Cir. 2008) ("The plaintiff's complaint that he was transferred after missing two meals due to his medication did not

give sufficient notice to prison officials that he was alleging that he was denied food while he was in segregation, thereby causing him to suffer dangerously low blood pressure. The plaintiff's grievance needed to alert prison officials to the 'nature of the wrong.'"); *Maddox v. Love*, 655 F.3d 709, 713 (7th Cir. 2011) (grievance serves its function if it provides prison officials a fair opportunity to address the complaints).[1]

The Eighth Amendment claim alleged against Nurse Capraro should also be dismissed on exhaustion grounds because Plaintiff did not timely appeal the denial of his May 31, 2021 grievance. The inmate handbook indicates that "[i]f the grievance is denied, you may file an appeal with the jail administrator within 7 calendar days of the grievance denial." The documents in this case show that Plaintiff's grievance was denied on June 3, 2021, and that Plaintiff did not appeal the grievance denial on, or before, June 10, 2021 (within 7 calendar days). Plaintiff instead sent the Manitowoc County Jail administrator a letter on July 8, 2021 – almost one month after his deadline to submit an appeal – expressing his intent to appeal the denial of his grievance. That letter – even if it could be considered a proper appeal – was untimely and Plaintiff thus did not satisfy the PLRA's exhaustion requirement. *See Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) (holding that prisoner does not satisfy exhaustion requirement by filing untimely or otherwise procedurally defective administrative grievances or appeals).

---

[1] The response to the grievance further shows that jail officials investigated potential issues regarding how information regarding Plaintiff's medications was being communicated, and not any potential issues regarding whether Plaintiff was receiving no medical care or improper medical care from Nurse Capraro. (LaCrosse Aff., Ex. 3) ("Was told inmate should have been given better idea about current status. Also explained that proper pass-on between staff would have helped this. McGhee states med issue is currently fixed…").

## CONCLUSION

For these reasons, Julie Capraro respectfully asks the Court to grant her Motion for Summary Judgment for Failure to Exhaust Administrative Remedies and dismiss all claims alleged against her as a matter of law.

Dated this 20th day of November, 2023.

                                         **MUNICIPAL LAW & LITIGATION GROUP, S.C.**
                                         Attorneys for Julie Capraro.

                              By: */s/ Electronically signed by Matteo Reginato*
                                         MATTEO REGINATO
                                         State Bar No: 1089724

                                         730 N. Grand Avenue
                                         Waukesha, WI 53186
                                         O: (262) 548-1340
                                         F: (262) 548-9211
                                         E: mreginato@ammr.net