UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAGENE C. MCGHEE,

      Plaintiff,

v.               Case No. 23-cv-24-pp

IRIS N. TORRES, JULIE CAPRARO
and DILIP TANNAN,

      Defendant.

---

**ORDER DENYING DEFENDANT TORRES'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 20) AND DENYING DEFENDANT CAPRARO'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 36)**

---

  Plaintiff Lagene C. McGhee, who is incarcerated at Sandstone Federal Correctional Institution and is representing himself, filed this case under 42 U.S.C. §1983. The court screened the complaint and allowed the plaintiff to proceed on Eighth Amendment claims against defendants Iris Torres and Julie Capraro for allegedly failing to treat his extreme pain after he fell at the Manitowoc County Jail. Dkt. No. 5 at 11. The court also allowed the plaintiff to proceed on an Eighth Amendment claim against defendant Dilip Tannan for an alleged delay in treating his painful condition when he was confined at Oshkosh Correctional Institution. Id. at 12-13. Defendants Torres and Capraro, who are represented by separate counsel, each have filed a motion for summary judgment for failure to exhaust administrative remedies. Dkt. Nos. 20, 36. This decision denies both motions and sets deadlines for the completing discovery and filing motions for summary judgment on the merits.

1

**I.   Facts[1]**

On May 18, 2021, the plaintiff was booked into the Manitowoc County Jail. Dkt. No. 22 at ¶1. At the time of the plaintiff's incarceration, the jail had a three-step grievance procedure. Id. at ¶¶2, 4. The grievance procedure was published in the Manitowoc County Jail Inmate Handbook (Dkt. No. 23-3, Exh. 3) and the Manitowoc County Jail Policy and Procedures also contained information about the grievance process (Dkt. No. 23-2, Exh. 2). Dkt. No. 43 at ¶3; Dkt. No. 38 at ¶1. The Jail Policy and Procedures state: "The grievance process is outlined in the inmate handbook and is posted in the cell blocks. Inmates may get additional information or clarification about the grievance process by submitting a request slip to a corrections officer." Dkt. No. 43 at ¶9.

Step 1 of the grievance process—Informal Complaint—may be submitted on a request slip to a corrections officer within seven calendar days of the event that is the subject of the complaint. Dkt. No. 22 at ¶7. The corrections officer will review the complaint and discuss the issue with the incarcerated individual, provide the individual with a copy of the answered request slip within seven days and, for complaints involving medical issues, refer to the Health Services Unit. Id.; Dkt. No. 38 at ¶2.

Step 2 of the grievance process—Formal Grievance—may be initiated by submitting a request slip asking for a grievance form within seven calendar days from the date the Informal Complaint was submitted if the complaint has

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

2

not been resolved to the incarcerated individual's satisfaction. Dkt. No. 22 at ¶8. The individual then has two calendar days to submit the grievance. Id. The grievance must involve an issue concerning the incarcerated person's health or personal welfare; address a rule, procedure or other aspect of the facility operations that affects the individual; or allege misconduct by an employee that personally affects the individual. Id.; Dkt. No. 38 at ¶3.

Step 3 of the grievance process—Appeal—provides for submitting an appeal if a grievance is denied or if the response to the formal grievance does not resolve the issue. Dkt. No. 22 at ¶9. The Inmate Handbook states,

> If a grievance is denied, you may file an[] appeal with jail administration within 7 calendar days of the grievance denial. You have 2 days after receiving an appeal form to complete it. File an appeal on a new grievance form with the 'Appeal' box checked.

Dkt. No. 43 at ¶9. The Jail Policy and Procedures state:

> An inmate may submit a request slip asking for an appeal form if the grievance response does not resolve the issue, or if the inmate believes that an error has been made or if correctional staff does not provide a written response within 7 calendar days of the date of the grievance and correctional staff did not notify the inmate of the delay in the response.

Id.

On May 31, 2021, the plaintiff filed a grievance related to the pain he was experiencing after his fall the previous day. Dkt. No. 22 at ¶10. The grievance states:

> On the date of 5/30/2021, I . . . slipped [and] fell on unit. I was taken to receiving cell. The 1st shift nurse informed . . . me that she was adding more meds for me to take 2 times a day. When 2nd shift c/o brought meds on the night on 5/30/2021 she only [gave] me half of what I was supposed to get. I stated to c/o that I was supposed to get more & asked him to check. He stated "no this is all

3

you get." On 5/31/2021 between 5:00 AM & 9:00 AM I asked to see nurse & for the rest of my meds & was denied until after 9:00 AM on 5/31/2021. I told nurse I was in a lot of pain & that I have not been getting all of my meds. 1 of 2 things happened. The nurse forgot to right [sic] it down that she upped my meds or the c/os . . . never check[ed].

[D]on't know, but I was in a lot of pain for a long time and no c/o checked from 8:00 p.m. 5/30/21 to 8:00 pm 5/31/21 and I asked them all every time they came to my door. And somebody is negligent. I have not been seen by the dr. or had xrays or MRI.

Dkt. No. 38 at ¶5; Dkt. No. 22 at ¶10.

The plaintiff's grievance was "accepted" on June 1 and two days later, the plaintiff received the following response to the grievance:

Spoken to about this grievance on 6/3. Was told inmate should have been given better idea about current status. Also explained that proper pass-on between staff would have helped this. [The plaintiff] states med issue is currently fixed. X-rays have been ordered by jail doctor which will be paid for by the jail.

Dkt. No. 23-4 at 1. The response indicates that the plaintiff's grievance was "denied." Id.; Dkt. No. 38 at ¶6.

The plaintiff filed a second grievance on June 1, 2021, which states that on May 30, 2021, he slipped on a wet floor and injured his spine and pelvis, and that he believes not having slip guard strips on the floors and wet floor signs put his safety at risk. Dkt. No. 22 at ¶12; Dkt. No. 23-5. The June 1 grievance was accepted that same day and returned to the plaintiff on June 3, 2021. Dkt. No. 22 at ¶14. The response states: "Spoken to about this grievance on 6/3. Was seen by Dr. Torres on 6/2 and x-rays will be ordered with cost being paid by the jail. Also informed that his ideas for signs & tape will be

4

considered and brought to the attention of maintenance." Id. at ¶15; Dkt. No. 23-5.

Defendant Dr. Torres saw the plaintiff on June 2, 2021 and ordered x-rays of his spine and pelvis. Dkt. No. 22 at ¶13. The next day, the plaintiff underwent an x-ray which showed no acute abnormalities of alignment, no radiographic evidence of acute fracture, no bone lesions, no bony narrowing of the spinal canal, no dislocation and no degenerative joint disease in the hips bilaterally. Id. at ¶16.

On June 10, 2021, the plaintiff was transferred to Dodge County Correctional Institution. Id. at ¶17. About one month later, on July 8, 2021, he prepared appeals of the denials of his May 31 and June 1 grievances. Id. at ¶¶18-19. His appeal of his May 31 grievance states:

> I am appealing denied Grievance I filed on 05/31/2021, which caused del[iberate] indifferen[ce] by Manitowoc County jail staff nurses and correctional officer[]s … . I received denied respon[s]es from Lt. Johnson, with no reason why my grievance was denied. But it is clear that Manitowoc Count Jail staff nurse[]s and c/o's neglect of my injury caused me to be in a lot [of] pain for a long time. also requesting names of nurse[]s and correctional officers involved.

Dkt. No. 38 at ¶9. Jail administrator Joy Brixius responded to the plaintiff's appeal by letter dated August 30, 2021; the letter states:

> The denied disposition means 'the allegation was proven and the action taken was proper". I do not know what the basis to your appeal is or what resolution you are asking for. Medical was called and involved with your incident upon learning of the fall. You were moved to the 1st floor for medical observation the day of and placed on medical observation log. You were already on meloxicam for your preexisting medical issues and pain. The jail Dr was informed of the situation. Further pain medication and ice were ordered by the Dr. X-rays were ordered and taken. You were seen by the jail RN's daily during this time as you can see in the medical records. You were

5

> physically seen by Dr. Torres on 6/2/21. All medical bills were paid by the jail. On 6/10/21, you were transferred to DCI. DCI was informed of your medical situation the day of your transfer through the Health Transfer Summary so they would have the information needed for continuation of care.

Dkt. No. 22 at ¶21.

According to the plaintiff, he was transferred to Dodge before he received a copy of the appeal form. Dkt. No. 43 at ¶24. He states that when he arrived at Dodge, he was placed in COVID-19 quarantine with no access to legal materials and that he submitted his appeals as soon as he could. Id. The Manitowoc County Jail Administrator did not receive the appeals until August 25, 2021, because they were sent to the wrong address. Dkt. No. 22 at ¶20. According to the plaintiff, he sent the appeals to the correct address but for reasons unknown to him, the USPS tracking information had the appeals routed through Chicago. Dkt. No. 34 at ¶20; Dkt. No. 35 at ¶6.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A

6

dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

    B.    Discussion

        1.    *Law on Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) provides that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether

7

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

        2.     *Defendant Torres's Motion*

Defendant Torres contends that the plaintiff didn't exhaust his administrative remedies because he did not file a grievance relating to the care he received from her. Dkt. No. 21 at 7. She also contends that the plaintiff did not file proper or timely appeals of the denial of any grievance. Id. The plaintiff responds that he was not required to identify Torres by name in a grievance, arguing that he was required only to raise an issue "concerning [his] health," which he did in his May 31 grievance. Dkt. No. 33 at 3-4. The plaintiff also contends that his appeals were not untimely because he included a "good cause" explanation for the delay, the jail's rules allow for a good cause

8

explanation and the jail administrator addressed his appeals on the merits. Id. at 4-5.

The plaintiff's claim against Dr. Torres is that she did not provide him with proper care for his injuries and pain after his fall on May 30, 2021. The day after he fell, the plaintiff submitted a grievance in which he complained of not receiving pain medication from jail nurses and officers. He also stated in that grievance that he was in a lot of pain and that he had not yet been seen by the doctor or had x-rays or an MRI. On June 2, Torres examined the plaintiff and ordered x-rays. On June 3, the plaintiff received a response to his grievance which stated that the plaintiff's "med issue" was "currently fixed" and that he had been seen by the doctor and that x-rays had been ordered.

An incarcerated individual has not exhausted where the allegation in his grievance is substantively different from his complaint allegations. See Bowers v. Dart, 1 F.4th 513, 517-18 (7th Cir. 2021). Torres cites Bowers in support of her contention that the plaintiff's May 31 grievance did not exhaust his claim against her. In Bowers, the plaintiff alleged in his federal complaint that prison employees failed to protect him from impending harm (an attack from another incarcerated individual) *before* it occurred while he alleged in his administrative grievance that a correctional officer ignored him *during* the attack. Id. at 517. The court of appeals affirmed the district court's determination that the plaintiff had failed to exhaust his administrative remedies based on the "disconnect" between the complaint and the grievance. Id. at 517-18. The plaintiff had not presented his federal complaint allegations to the jail through

9

the grievance process and "federal courts lack discretion to consider a claim that had not traveled the required administrative path." Id. at 518 (citing Ross v. Blake, 578 U.S. 632 (2016)).

The facts of this case are distinguishable from the facts in Bowers. Here, the plaintiff's grievance raised the issue of allegedly not receiving adequate pain medication and care for his injuries, including not having yet seen the doctor, and the jail addressed those issues in its response. This grievance appears to be adequate under the jail's grievance policy. To properly exhaust administrative remedies, incarcerated individuals must "complete the administrative review process in accordance with the applicable procedural rules" defined by the institution's grievance process. Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88). There is no dispute that the plaintiff timely filed his grievance and did so in the appropriate manner. The jail's Inmate Handbook states that a "grievance must involve an issue concerning your health or personal welfare; address a rule, procedure, or other aspect of facility operations that affects you; or allege misconduct by an employee that personally affects you." The May 31 grievance involves an issue concerning the plaintiff's health. The defendant has pointed to no rule or procedure that required the plaintiff to name her in the grievance. The court finds that the plaintiff's May 31 grievance exhausted his claim against Torres.

Defendant Torres also contends that the plaintiff failed to exhaust because he filed his appeal after the expiration of the seven-day deadline for submitting appeals. However, the jail's policy allows the submission of

10

untimely appeals for good cause and the jail administrator accepted the plaintiff's appeal and addressed it on the merits. See McDaniel v. Meisner, 617 F. App'x 553, 557 (7th Cir. 2015) (the exhaustion requirement is satisfied if prison officials ignore a grievance's administrative failings and address it merits) (citing Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) ("Failure to comply with administrative deadlines dooms the claim except where the institution treats the filing as timely and resolves it on the merits."); Pozo, 286 F.3d at 1025 ("Consider once more the analogy to collateral attack: if a state court accepts a belated filing, and considers it on the merits, that step makes the filing 'proper' for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."); Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.")). Because the jail addressed the plaintiff's appeal on the merits, the court will not deem the appeal untimely.

The plaintiff has exhausted his claim against defendant Torres. The court will deny her motion for summary judgment on exhaustion grounds. [2]

---

[2] In her reply brief, Torres contends that the court should grant her motion because the plaintiff did not file his response to her motion for summary judgment until December 1, 2023—four days after the November 27 deadline. Dkt. No. 42 at 1. The court will not grant Torres's motion on those grounds. While unrepresented litigants must follow deadlines, the plaintiff is incarcerated outside the state, has reported some difficulty with his mail and the court received the plaintiff's response only a few days after the deadline. At most, the court could have considered Torres's motion unopposed (without considering the plaintiff's response). Even if it had done that, the court would

11

### 3. *Defendant Capraro's Motion*

Defendant Capraro contends that the plaintiff's claim against her should be dismissed on exhaustion grounds because the plaintiff's May 31 grievance did not provide jail administrators with notice of the alleged "nature of the wrong." Dkt. No. 37 at 6-7. According to Capraro, the grievance does not place jail officials on notice that she was refusing to provide the plaintiff with medical care, or that there were shortcomings regarding the medical care she provided. Id. at 7. Capraro states that "[t]he grievance indicates that Nurse Capraro *was providing the plaintiff with appropriate medical care – i.e., 'she upped my meds'* – but that she may have forgotten to write the new medication order down." Id. at 7 (emphasis in original). Capraro also contends that the plaintiff's claim must be dismissed on exhaustion grounds because the plaintiff did not timely appeal the denial of his May 31, 2021 grievance. Id. at 8. She states that because the grievance was denied on June 3, 2021, the plaintiff had until June 10, 2021 to appeal; she asserts that his July 8, 2021 appeal letter to the administrator was almost one month late. Id.

The plaintiff first responds that the court should deny Capraro's motion because she did not serve him with all documents filed in support of the motion. Dkt. No. 46 at 2. The plaintiff states that while Capraro's certificate of service states that she served "the notice of motion and motion, the brief in support, Capraro's proposed findings of fact, and the affidavit of Andrew

---

have denied Torres's motion because the grievance materials she provided in support of her motion show that the plaintiff exhausted his claim against her.

12

LaCrosse with Exhibits 1 through 5[,]" the packet the plaintiff received did not include Capraro's proposed findings of fact or the exhibits to the LaCrosse affidavit. Id. The plaintiff also contends that he fully exhausted his administrative remedies because his May 31 grievance stated that he was experiencing significant pain, that the 2nd shift nurse (who was Capraro) denied him his full prescribed dosage of pain medication and that jail staff, including Capraro, were ignoring his medical circumstances. Id. at 3. The plaintiff also asserts that his appeal was accepted (in other words, that it was not rejected on timeliness grounds) and denied on the merits. Id.

In this case, the plaintiff alleges that Capraro violated his constitutional rights when she saw him on May 31, 2021 because "he advised her of his pain and asked for help," she "saw swelling and bruising" and she "did nothing to ease or treat him pain." Dkt. No. 37 at 7. The plaintiff's May 31 complaint, in which he raised the issue that Capraro did not give him sufficient pain medication, exhausts his claim against her.[3] Regarding the plaintiff's appeal, the court already has determined that the jail's decision to address the appeal on the merits forecloses any claim that he failed to properly exhaust. See supra. at 10-11.

---

[3] The plaintiff states that Capraro's brief confuses her role. Dkt. No. 46 at 5. According to the plaintiff, Capraro was not the nurse who upped his medication, but she was the nurse who refused to administer the prescribed dosage of medication. Id.

The court will deny Capraro's motion for summary judgment.[4]

### III. Conclusion

The court **DENIES** defendant Torres's motion for summary judgment on exhaustion grounds. Dkt. No. 20.

The court **DENIES** defendant Capraro's motion for summary judgment on exhaustion grounds. Dkt. No. 36.

The court **ORDERS** that the deadline for the parties to complete discovery is **August 30, 2024** and the deadline for the parties to file motions for summary judgment on the merits is the end of the day on **September 30, 2024**.

Dated in Milwaukee, Wisconsin this 29th day of May, 2024.

                                    **BY THE COURT:**

                                    **HON. PAMELA PEPPER**
                                    **Chief United States District Judge**

---

[4] Because the court has denied Capraro's motion for summary judgment, the court need not address whether the plaintiff received her proposed findings of facts and exhibits.